IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMANDA CORZINE, F/K/A ) | |
| AMANDA WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.: **3:08-cv-00519-PMF** |
| ) | |
| EJL ENTERPRISES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

Before the Court are three Motions for Summary Judgment. Defendant has filed two Motions for Summary Judgment (Docs. 51 & 58) and Plaintiff has filed one Motion for Summary Judgment (Doc. 64). Defendant's first Motion for Summary Judgment will be addressed first, while Defendant's second Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment will be addressed second and concurrently.

### Facts

The facts relevant to all three of these Motions are as follows:

Plaintiff began working for Defendant on January 8, 2007. Defendant operates several State Beauty Supply stores throughout Southern Illinois and Southeastern Missouri. Plaintiff was a distribution sales consultant and would visit various salons throughout Southern Illinois to introduce new products, deliver orders and take new orders. On April 5, 2007, Plaintiff was in a car accident while between salon visits for Defendant. Following her accident, she did not return to work for Defendant.

In Defendant's employee handbook which was given to Plaintiff when she began working, it states that Defendant allows its full-time employees to participate in its health insurance plan after 90 days of employment. The handbook stated that Defendant would pay one-half of the insurance premium, and the employee would pay the other half. Prior to her accident, Plaintiff was a full-time employee who had not reached the end of the 90 day period.

Following her accident, Plaintiff's father spoke with Defendant's owners who agreed to let her enroll in the insurance plan. After enrolling in the insurance plan, Plaintiff began paying 100% of the insurance premiums. Plaintiff paid for – and was therefore covered by – this insurance for the period covering May 2007 through August 2007.

On September 29, 2007, Plaintiff cancelled her insurance coverage in an e-mail to one of Defendant's owners. Around this same time, Plaintiff told Defendant that she would be physically unable to return to work, at which time Plaintiff was terminated from her employment with Defendant.

Plaintiff has brought two counts in her Second Amended Complaint.

In Count I, Plaintiff states that under 28 U.S.C. § 1161, *et seq.*, the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), insurance plan administrators are required to notify individuals covered under the Act, within 14 days, of that individual's right to elect continued health insurance coverage following a qualifying event, such as termination. Plaintiff argues that she was damaged when Defendant allegedly failed to provide her with this notice.

In Count II, Plaintiff claims that Defendant is liable for breach of contract under 29 U.S.C. § 1001, *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), and the common law of the State of Illinois. Plaintiff argues that under the terms and conditions of

the employee handbook, Defendant was required to pay 50% of her insurance premiums, and the failure to do so resulted in a breach of contract.

## Standard of Review

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of a scintilla of evidence in support of a party's position is insufficient; there must be evidence on which the jury could reasonably find for the party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## Defendant's First Motion for Summary Judgment

In Defendant's First Motion for Summary Judgment (Doc. 51), Defendant argues that it is entitled to Summary Judgment on Count II of Plaintiff's Second Amended Complaint because Defendant's employee handbook did not create a valid and enforceable contract requiring Defendant to pay 50% of Plaintiff's insurance premiums. Defendant also argues that even if the employee handbook did create a valid contract, COBRA does not require Defendant to pay 50% of Plaintiff's insurance premiums after her termination.

In certain circumstances, an employee can establish a contract between an employer and employee predicated upon an employee handbook. *Duldulao v. Saint Mary of Nazareth Hospital Center*, 505 N.E.2d 314 (Ill. 1987). The Court is *Duldulao* articulated three required elements necessary to create an enforceable agreement:

> (a) The language of the handbook or policy statement contains a promise clear enough that an employee would reasonably believe that an offer has been made;
> (b) The handbook or policy statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and

3

(c) The employee accepts the employers offer by commencing or continuing to work after receiving or learning of the contents of the handbook or policy statement. *Id.* at 319.

Here, it is undisputed that Plaintiff was provided with Defendant's employee handbook shortly after starting work for Defendant. Additionally, it is undisputed that Plaintiff continued to work for Defendant after receiving the employee handbook. However, the parties disagree about whether the language in Defendant's handbook regarding the payment of 50% of a full time employee's health insurance premium by Defendant clearly created an offer by Defendant to do just that. Specifically, Defendant points to language in the employee handbook that states:

> "State reserves the right to interpret, revise, supplement or rescind all or any portion of this guide at any time, as it deems appropriate…The contents of this guide are presented as a matter of information only and are not intended to create, nor are they to be construed to constitute a contract, express or implied, between State Beauty Supply and any of its employees."

The Seventh Circuit in *Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir., 2000), stated that "[s]uch a disclaimer, if clear and forthright…is a complete defense to a suit for breach of contract based on an employee handbook." As the Court opined in *Workman*, "[o]ne might wonder what function an employee handbook serves if it does not create enforceable obligations. The answer is that it conveys useful information to the employee. And more – for to the extent that it does contain promises, even if not legally binding ones, it places the employer under a moral obligation, or more crassly gives him a reputational incentive, to honor those promises." *Id.* at 1001.

In this case, it is clear that Defendant's employee handbook contained the precise disclaiming language the Court was referring to in *Workman*. The Court in *Workman* specifically cited *Duldulao* for the proposition that "…a handbook can create a binding contract if it contains clear promissory language that makes the handbook an offer that the employee accepts by continuing to work after receiving it." *Id.* at 1000. Nevertheless, the Court stated that

it "need not speculate about whether" the employee handbook created a contract, because "…the plaintiff's contractual claim is extinguished by the statement in the handbook that "this Policy Book is not a contract of employment and does not affect your rights as an employee…." *Id.*

Having determined that Defendant's employee handbook contained – and repeated – the aforementioned disclaimer statements, it is clear that no contract was created between Plaintiff and Defendant by virtue of the health insurance premium language contained in the handbook. For these reasons, Defendant is granted Summary Judgment as to Count II of Plaintiff's Second Amended Complaint.

### Defendant's Second Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment

Defendant and Plaintiff both bring Motions for Summary Judgment with respect to Count I of Plaintiff's Second Amended Complaint.

In Defendant's Second Motion for Summary Judgment (Doc. 58), Defendant argues that it is entitled to Summary Judgment because Plaintiff was not entitled to notice of her right to elect continued health insurance coverage following her termination.  Additionally, assuming Plaintiff was entitled to this notice, Defendant claims it fully complied with this requirement by sending Plaintiff the necessary COBRA notice.  In Plaintiff's Motion for Summary Judgment (Doc. 64), Plaintiff argues that she is entitled to Summary Judgment because Defendant failed to send her notice of her right to elect continued health insurance coverage following her termination.  Further, to the extent that Defendant claims it did send her a notice following her termination, this notice failed to comply with the COBRA requirements.

Under 29 U.S.C. § 1166(c), notification of an individual's rights under COBRA "…shall be made within 14 days…of the date on which the administrator is notified [of a qualifying event]."  29 U.S.C. § 1163 states that "…the term 'qualifying event' means…any of the

5

following events which, but for the continuation coverage required under this part, would result in the loss of coverage." Under subsection 2 of this statute, a qualifying event includes "[t]he termination…of the covered employee's employment." 29 U.S.C. § 1163(2). "The term 'covered employee' means an individual who is (or was) provided coverage under a group health plan by virtue of the performance of services by the individual for 1 or more persons maintaining the plan…" 29 U.S.C. § 1167(2).

In this case, it is undisputed that Plaintiff was allowed to enroll in Defendant's health insurance plan following her accident. It is further undisputed that on September 29, 2007, Plaintiff cancelled her insurance coverage in an e-mail to one of Defendant's owners, and that shortly after this, Plaintiff was terminated from her employment with Defendant. Both Plaintiff and Defendant concede that Plaintiff was a "covered employee" under COBRA while she was paying her health insurance premiums. Defendant, however, argues that after Plaintiff voluntarily cancelled her health insurance coverage in her September 29, 2007 e-mail to one of Defendant's owners, she ceased being a "covered employee," because her subsequent termination did not result in the *loss* of coverage. Because Plaintiff was no longer a "covered employee," Defendant argues that she was not entitled to a COBRA notice following a "qualifying event." While Plaintiff argues that she would have continued her health insurance coverage past September 29, 2007 had Defendant paid 50% of her premiums, the Court, by granting Defendant Summary Judgment on Count II of Plaintiff's Second Amended Complaint above, made it clear that Defendant was under no such obligation to pay 50% of Plaintiff's premiums merely by virtue of the language in Defendant's employee handbook.

Therefore, because Plaintiff did not suffer a *loss* of health insurance coverage following her termination by Defendant, she was not entitled to notice of her rights under COBRA.

Further, because Plaintiff was not entitled to notice of her rights under COBRA, the Court need not determine whether the notice sent by Defendant complied with COBRA. For these reasons, Defendant is granted Summary Judgment as to Count I of Plaintiff's Second Amended Complaint.

## Conclusion

For the foregoing reasons, Defendant's Motions for Summary Judgment (Docs. 51 & 58) are GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 64) is DENIED. Having resolved all claims set forth by Plaintiff in this case, Judgment shall enter in favor of Defendant in this matter.

**SO ORDERED**

**DATED: February 3, 2010.**

                                              s/ *Philip M. Frazier*
                                              **PHILIP M. FRAZIER**
                                              **UNITED STATES MAGISTRATE JUDGE**